**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**



|  |  |
|---|---|
| THOMAS J. HELMS and BIERMAN DERMATOLOGY GROUP/IRA on behalf of themselves and all others similarly situated, ) ) ) ) ) | |
| Plaintiffs ) | |
| v. ) ) | |
| REXALL SUNDOWN, INC., CARL DESANTIS, CHRISTIAN A. NAST, DAMON DESANTIS and GEARY COTTON, ) ) ) ) | |
| Defendants. ) ) | |

CIVIL ACTION NO.

CLASS ACTION COMPLAINT
FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS

**JURY TRIAL DEMANDED**

### NATURE OF THE ACTION

1.    This is a class action on behalf of all purchasers of the common stock of Rexall Sundown, Inc. ("Rexall" or the "Company") between March 19, 1998, and November 5, 1998, inclusive, (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

### JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1337 and 1367 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

3.    This action arises under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

4.    Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) and (c).  Substantial acts in furtherance of the alleged fraud and/or its effects have occurred within this



District and Rexall maintains its principal executive offices in this District.

5.    In connection with the acts and omissions alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

6.    (a)  Plaintiff Thomas J. Helms purchased Rexall common stock during the Class Period, as set forth in the accompanying certification which is incorporated herein by reference, and was damaged thereby.

(b)  Plaintiff Bierman Dermatology Group/IRA purchased Rexall common stock during the Class Period, as set forth in the accompanying certification which is incorporated herein by reference, and was damaged thereby.

7.    Defendant Rexall is a Florida corporation with its principal place of business at 851 Broken Sound Pkwy NW, Boca Raton, Florida 33487.  Rexall develops, manufactures, markets and sells vitamins, nutritional supplements and consumer health products.  The Company offers approximately 750 products to retailers and maintains its own mail order catalogue and direct sales force.

8.    (a)  The individual defendants, at all times relevant to this action, served in the capacities listed below and received substantial compensation:

2

| **Name** | **Position** |
|----------|--------------|
| Carl DeSantis | Chairman Of The Board |
| Christian A. Nast | Chief Executive Officer And Director |
| Damon DeSantis | President And Director |
| Geary Cotton | Chief Financial Officer And Treasurer |

(b)   The Individual Defendants, as senior officers and/or directors of Rexall were controlling persons of the Company.  Each exercised his power and influence to cause Rexall to engage in the fraudulent practices complained of herein.

9.   Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Rexall common stock, by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme:  (i) deceived the investing public regarding Rexall's business, its finances and the intrinsic value of Rexall common stock; and (ii) caused plaintiffs and other members of the Class to purchase Rexall common stock at artificially inflated prices.

PLAINTIFFS' CLASS ACTION ALLEGATIONS

10.   Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased or otherwise acquired Rexall common stock between March 19, 1998, through November 5, 1998, inclusive (the "Class Period"), and who were damaged thereby.  Excluded from the Class are defendants, members of the immediate family of each of the Individual

3

Defendants, any subsidiary or affiliate of Rexall and the
directors, officers and employees of Rexall or its subsidiaries
or affiliates, or any entity in which any excluded person has a
controlling interest, and the legal representatives, heirs,
successors and assigns of any excluded person.

11.   The members of the Class are so numerous that
joinder of all members is impracticable.  While the exact number
of Class members is unknown to plaintiffs at this time and can
only be ascertained through appropriate discovery, plaintiffs
believe that there are thousands of members of the Class located
throughout the United States.  As of July 13, 1998, there were
reportedly more than 72 million shares of Rexall common stock
outstanding.  Throughout the Class Period, Rexall common stock
was actively traded on the NASDAQ National Market System.  Record
owners and other members of the Class may be identified from
records maintained by Rexall and/or its transfer agents and may
be notified of the pendency of this action by mail, using a form
of notice similar to that customarily used in securities class
actions.

12.   Plaintiffs' claims are typical of the claims of
the other members of the Class as all members of the Class were
similarly affected by defendants' wrongful conduct in violation
of federal law and state law that is complained of herein.

13.   Plaintiffs will fairly and adequately protect the
interests of the members of the Class and have retained counsel
competent and experienced in class and securities litigation.

4

14.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

i)   whether the federal securities laws were violated by defendants' acts and omissions as alleged herein;

ii)   whether defendants participated in and pursued the common course of conduct complained of herein;

iii) whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, financial condition and prospects of Rexall;

iv)   whether statements made by defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance and prospects of Rexall;

v)   whether the market price of Rexall common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

vi)  to what extent the members of the Class have sustained damages and the proper measure of damages.

15.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by individual Class members may be

relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background Facts

16.  Rexall develops, manufactures, markets and sells vitamins, nutritional supplements and consumer health products. The Company offers approximately 750 products to retailers and maintains its own mail order catalogue and direct sales force.

17.  During the Class Period, defendants issued a series of materially false and misleadingly statements about Rexall, its products and the strength of its business.  These statements drove Rexall common stock to a Class Period high of $38.375.  While Rexall common stock was trading at these artificially inflated levels, the Individual Defendants and other Rexall insiders sold in excess of $35 million of Rexall common stock to the unsuspecting public.  At the close of the Class Period, after the truth regarding Rexall's business was finally revealed to the market, the price of Rexall common stock plummeted 40%.

### Materially False And Misleading
### Statements Issued During The Class Period

18.  The Class Period commences on March 19, 1998.  On that date, Rexall issued a press release announcing its financial results for the second quarter of 1998, the period ending February 28, 1998.  The Company reported that sales increased 78%

to $115 million from $64.9 million for the same period the prior year, and that pro forma net income increased 67% to $14.7 million from $8.8 million for the same period the prior year. Defendant Nast commented on the results as follows:

> Sales growth momentum remains strong in each of our divisions and resulted in another outstanding record quarter.  Sales to Retailers rose 95% compared to the same period last year, and Rexall Showcase International, the Company's Direct Sales division, posted strong sales gain of 61% compared to the prior year's quarter.
>
> Osteo Bi-Flex(TM) remains the third best selling nutritional supplement in the country.  <u>In addition, we continue to see exceptional demand for the entire line of Sundown(R) herbals which is presently the number one selling herbal line in the total U.S. food, drug and mass markets</u> . . . [Emphasis added.]

Defendant Carl DeSantis also commented on the results as follows:

> The Company continues to have strong momentum and is clearly executing its strategic plan. In this last quarter we have completed the Richardson acquisition, and we continue to actively pursue other acquisitions as part of our ongoing business plan.  With continued positive trends in the vitamin and nutritional supplement industry along with continued focus on science-based and proprietary products, we are well positioned to continue our leadership role in the industry.

19.  On April 13, 1998, Rexall filed a Form 10-Q for the period ending February 28, 1998, with the SEC which was signed by defendants Carl DeSantis and Cotton and confirmed the previously announced financial results.

20.  On June 15, 1998, an article in <u>The Wall Street Journal</u> reported on a presentation made by defendant Nast at a

recent Piper Jaffray investment conference.  The article stated
in pertinent part:

> Following a presentation at the recent Piper
> Jaffray investor conference here, Christian
> A. Nast, Rexall Sundown's chief executive
> officer, said Wal-Mart always has been in the
> private label business depending on its
> needs.
>
> "We're very supportive of their business,"
> Mr. Nast said.  "We aren't concerned."
>
> About 33% of Rexall's sales in recent periods
> came from sales of its pills to Wal-Mart.
> About 46% of its products are distributed
> through food, mass market and drug retailers.
>
> Besides Rexall vitamin supplements are the
> lowest-priced among branded vitamins in the
> industry, Mr. Nast asserted.
>
> He painted an optimistic growth picture for
> the Boca Raton, Fla. company and said sales
> and earnings are expected to grow 25% to 35%
> annually, topping the industry's growth rate.

The article also noted that defendant Nast had stated at the
conference that he was "very comfortable" with Piper Jaffray
analyst Allan F. Hockok's fiscal 1998 earnings estimate of 92
cents a share.

21.  On June 17, 1998, Rexall issued a press release
announcing its financial results for the third quarter of 1998,
the period ending May 31, 1998.  The Company reported that sales
increased 101% to $151 million from $75 million for the same
period the prior year, and that pro forma net income increased
103% to $19.4 million from $9.8 million for the same period the
prior year.  Defendant Nast commented on the results as follows:

> We are very proud to have achieved this
> dramatic level of sales and net income
> growth.  Sales to retailers rose 156%

8

compared to the same period last year, and
Rexall Showcase International, the Company's
direct sales division, continued its success,
posting strong sales gain of 45% compared to
the prior year's quarter.  More impressive is
the fact that our third quarter operating
margin of 19.8% increased 1.7 points,
compared to the third quarter of fiscal 1997,
despite the increase in our investment in
advertising, research and product development
and manufacturing capacity.

Defendant Nast also stated:

The Company's year-over-year sales growth
continues to significantly outpace that of
the overall industry and reflects the
leadership we are bringing throughout the
entire category.  Our products continue to be
well received by consumers and our
distribution continues to expand.  [Emphasis
added.

Defendant Carl DeSantis also commented on the results as follows:

The continuation of record levels of sales
and earnings reflects all the investments and
efforts that the Company and its employees
are making to ensure our continued leadership
in the vitamin and nutritional supplement
industry.

22.  On July 14, 1998, Rexall filed a Form 10-Q for the
period ending May 31, 1998, with the SEC which was signed by
defendants Carl DeSantis and Cotton and confirmed the previously
announced financial results.

23.  On August 5, 1998, Rexall issued a press release
announcing that "the company remains confident regarding its
outlook for the fiscal year ending August 31, 1998."  Defendant
Nast was quoted as follows:

Based on the information available to date,
we remain on track to deliver record revenues
and record earnings for the fiscal year to
finish what has been a banner year for the
company. . . .

9

> Thus, far, our year-over-year growth has
> outpaced that of the industry, establishing
> Rexall Sundown as the leader in the category.
> <u>Industry trends remain positive and our
> products continue to be well received by
> consumers and retailers alike reinforcing our
> confidence in the future.</u>
>
> Mr. Nast also noted that the Company's stock
> price experienced a decline yesterday, along
> with other companies in the vitamin industry.
> "We believe that the reason for the decline
> was related to comments made regarding
> pricing dynamics in the health food channel
> of distribution.  <u>In our judgment, this event
> in no way impacts negatively on the growth
> prospects of the vitamin and nutritional
> supplement industry or on the basic, inherent
> strength of Rexall Sundown.</u>  Our current and
> future position as the leader in the vitamin
> and nutritional supplement industry remains
> unchanged. . . [Emphasis added.]

24.  On September 29, 1998, Rexall issued a press

release announcing that its Board of Directors had authorized a

share repurchase program which will allow the Company to buy up

to $100 million of Rexall Sundown common stock.  The press

release stated:

> The action taken by the Board of Directors
> reflects our continued confidence in the
> Company, its future growth potential and our
> positive outlook regarding the long-term
> fundamentals of the vitamin and nutritional
> supplement industry," said Carl DeSantis,
> Chairman of the Board.  "The Board believes
> that this repurchase program represents an
> attractive investment opportunity that will
> benefit our shareholders."

25.  On October 7, 1998, Rexall issued a press release

announcing its financial results for the fourth quarter of 1998,

the period ending August 31, 1998, and the entire fiscal 1998

financial results.  The Company reported that sales for the

fourth quarter increased 73% to $153.6 million from $88.6 million

for the same period the prior year, and that pro forma net income increased 81% to $20.6 million from the same period the prior year.  Defendant Nast commented on the results as follows:

> We once again achieved outstanding revenue and net income growth.  Sales to retailers rose 99% and sales of Rexall Showcase International, the Company's Direct Sales Division, increased 42% compared to the prior year's quarter.  More impressive is the fact that our fourth quarter operating margins of 20.6 percent increased approximately 1.9 points, compared to the fourth quarter of 1997, during a period where we more than doubled our investment in advertising and product development . . .
>
> We continue to achieve a substantially higher sales growth rate compared to the overall nutritional industry reflecting our continued success at gaining new distribution, broadening distribution with in our existing accounts, expanding our direct sales distributor base and introducing innovative new science based products.  [Emphasis added.]

### The Truth Begins To Emerge

26.  On November 5, 1998, Rexall shocked the market by announcing that it "expects its fiscal first quarter sales to be 11-12% above the prior year first quarter while earnings per share are expected to be below the $0.20 reported last year.  The Company primarily attributes its expected first quarter results to a slow down in retail sales within the nutritional industry."  The Company also revealed that the slow down in the nutritional industry had caused retailers to "re-align their inventory positions and ordering patterns which adversely impacted sales in the first quarter."  Defendant Nast provided the following explanation:

11

> Reviewing the most recent market data, we now
> believe that the industry has returned to
> historical mid-teens growth, more quickly
> than we expected.

27.   The price of Rexall plummeted in response to this
announcement falling from $22.00 per share to $13.125 per share,
a decline of $8.875 per share, or 40%, and a decline of 65% from
a Class Period high of $38.375 per share reached on July 13,
1998.

28.   The market for Rexall's common stock was open,
well-developed and efficient at all relevant times.  As a result
of these materially false and misleading statements and failures
to disclose, Rexall common stock traded at artificially inflated
prices during the Class Period until the time the fact that
Rexall had engaged in the wrongful course of conduct described
herein was finally communicated to an understood by the
securities markets.  Plaintiffs and other members of the Class
purchased or otherwise acquired Rexall common stock relying upon
the integrity of the market price of Rexall stock and market
information relating to Rexall and have been damaged thereby.

29.   During the Class Period, defendants materially
misled the investing public, thereby inflating the price of
Rexall stock, by publicly issuing false and misleading statements
and omitting to disclose material facts necessary to make
defendants' statements, as set forth herein, not false and
misleading.  Said statements and omissions were materially false
and misleading in that they failed to disclose material adverse

information and misrepresented the truth about the Company, its business, finances and operations, including, <u>inter</u> <u>alia</u>:

(a)   that demand for the Company's products was weakening and that in response the Company was aggressively stuffing its distribution channels with product in order to mask this trend;

(b)   that the increased sales of Rexall products was the result of the Company's channel stuffing practices and therefore the Company's reported financial results were not truly representative of the demand for the Company's products;

(c)   that the market for vitamins and nutritional supplements was slowing dramatically such that historic growth rates could not be sustained and the Company's sales would slow dramatically;

(d)   that Wal-Mart's introduction of private-label vitamins and nutritional supplements was in fact negatively impacting the Company's sales to Wal-Mart -- its single largest customer; and

(e)   that the Company's estimates, projections and opinions as to its expected revenues, earnings, income and value of its stock were lacking in reasonable basis at all relevant times.

30.   At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiffs and other members of the Class.  As described herein, during the Class Period,

13

defendants made or caused to be made a series of materially false or misleading statements about Rexall's business, business practices and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Rexall and its business, finances and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiffs and other members of the Class purchasing the Company's common stock at an artificially inflated price, thus causing the damages complained of herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

31.  At all relevant times, the market for Rexall common stock was an efficient market for the following reasons, among others:

(a)  Rexall common stock met the requirements for listing, and was listed and actively traded, on the NASDAQ National Market System, a highly efficient market;

(b)  As a regulated issuer, Rexall filed periodic public reports with the SEC and the NASD;

(c)  Rexall stock was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

14

(d)   Rexall regularly issued press releases which were carried by national newswires.  Each of these releases was publicly available and entered the public marketplace.

32.   As a result, the market for Rexall securities promptly digested current information with respect to Rexall from all publicly-available sources and reflected such information in Rexall's stock price.  Under these circumstances, all purchasers of Rexall common stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices and a presumption of reliance applies.

**NO SAFE HARBOR**

33.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. The specific statements pleaded herein were not identified as "forward-looking statements" when made.  Nor was it stated with respect to any of the statements forming the basis of this complaint that actual results "could differ materially from those projected."  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking was made the particular speaker knew that the particular forward-

15

looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Rexall who knew that those statements were false when made.

## SCIENTER ALLEGATIONS

34.  As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements, issued or disseminated by or in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Rexall and its business practices, their control over and/or receipt of Rexall's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Rexall were active and culpable participants in the fraudulent scheme alleged herein.  Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public.  This case does not involve allegations of false forward-looking statements or projections but instead involves false statements concerning the Company's business, finances and operations.  The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a

16

substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company.

35.   The Individual Defendants engaged in such a scheme to inflate the price of Rexall common stock in order to: (i) protect and enhance their executive positions and the substantial compensation and prestige they obtained thereby; (ii) enhance the value of their personal holdings of Rexall common stock and options; and (iii) permit profitable insider sales by Rexall insiders.

36.   The following chart sets forth the insider trading by the Individual Defendants and other Rexall insiders:

| NAME | DATE | SHARES | PRICE | PROCEEDS |
|------|------|--------|-------|----------|
| Cotton, Geary | 06/24/98 | 13,000 | $34.44 | 447,720 |
| | 06/25/98 | 23,000 | $36.21 | 832,830 |
| | 06/29/98 | 1,000 | $35.89 | 35,890 |
| | 06/30/98 | 3,000 | $36.01 | 108,030 |
| | | 40,000 | | $1,424,470 |
| | | | | |
| DeSantis, Carl | 03/24/98 | 75,000 | $36.76 | 2,757,000 |
| | 03/25/98 | 15,000 | $36.25 | 543,750 |
| | 04/13/98 | 35,000 | $32.93 | 1,152,550 |
| | 06/18/98 | 110,000 | $35.77 | 3,934,700 |
| | 06/19/98 | 33,000 | $35.67 | 1,177,110 |
| | 06/23/98 | 85,000 | $34.43 | 2,926,550 |
| | 06/24/98 | 60,000 | $34.13 | 2,047,800 |
| | 07/10/98 | 50,000 | $37.59 | 1,879,500 |
| | | 463,000 | | $16,418,960 |

17

| | | | | |
|---|---|---|---|---|
| DeSantis, Dean | 03/30/98 | 1,150 | $36.01 | 41,412 |
| | 06/24/98 | 21,000 | $34.44 | 723,240 |
| | 06/25/98 | 27,000 | $36.21 | 977,670 |
| | 06/26/98 | 13,000 | $35.82 | 465,660 |
| | | 62,150 | | $2,207,982 |
| | | | | |
| DeSantis, Syliva | 03/20/98 | 22,500 | $37.03 | 833,175 |
| | 03/23/98 | 27,500 | $37.00 | 1,017,500 |
| | | 50,000 | | $1,850,675 |
| | | | | |
| Leedy, Stanley | 04/08/98 | 4,000 | $32.13 | 128,520 |
| | 06/24/98 | 2,000 | $34.44 | 68,880 |
| | | 6,000 | | $197,400 |
| | | | | |
| Palin, Nickolas | 06/24/98 | 21,000 | $34.44 | 723,240 |
| | 06/25/98 | 35,000 | $36.21 | 1,267,350 |
| | 06/26/98 | 17,000 | $35.82 | 608,940 |
| | 06/29/98 | 2,500 | $35.89 | 89,725 |
| | 06/30/98 | 7,168 | $36.01 | 258,120 |
| | | 82,668 | | $2,947,375 |
| | | | | |
| Nast, Christian A. | 06/24/98 | 72,000 | $34.44 | 2,479,680 |
| | 06/25/98 | 142,000 | $36.21 | 5,141,820 |
| | 06/29/98 | 1,000 | $35.89 | 35,890 |
| | 06/30/98 | 20,021 | $36.01 | 720,956 |
| | | 235,021 | | $8,378,346 |
| | | | | |
| Werber, Richard | 06/24/98 | 13,000 | $34.44 | 447,720 |
| | 06/25/98 | 23,000 | $36.21 | 832,830 |
| | 06/26/98 | 10,000 | $35.82 | 358,200 |

| | | | | |
|---|---|---|---|---|
| | 06/29/98 | 1,000 | $35.89 | 35,890 |
| | 06/30/98 | 3,000 | $36.01 | 108,030 |
| | | 50,000 | | $1,782,670 |
| | | | | |
| **TOTAL** | | 988,839 | | $35,207,878 |
| | | | | |

## FIRST CLAIM

### (Violations Of Section 10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against All Defendants)

37.  Plaintiffs repeat and reallege each and every allegation contained above.

38.  Each of the defendants:  (a) knew or recklessly disregarded material adverse non-public information about Rexall's financial results and then existing business conditions, which was not disclosed; and (b) participated in drafting, reviewing and/or approving the misleading statements, releases, reports and other public representations of and about Rexall.

39.  During the Class Period, defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40.  Defendants have violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they:  (a) employed devices, schemes and artifices to defraud; (b) made

19

untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon the purchasers of Rexall stock during the Class Period.

   41. Plaintiffs and the Class have suffered damage in that, in reliance on the integrity of the market, they paid artificially inflated prices for Rexall stock.  Plaintiffs and the Class would not have purchased Rexall stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' false and misleading statements.

**SECOND CLAIM**

**(Violation Of Section 20(a) Of The Exchange Act
Against Individuals Defendants)**

   42. Plaintiffs repeat and reallege each and every allegation contained above.

   43. The Individual Defendants acted as controlling persons of Rexall within the meaning of Section 20(a) of the Exchange Act.  By reason of their senior executive and/or Board positions they had the power and authority to cause Rexall to engage in the wrongful conduct complained of herein.

   44. By reason of such wrongful conduct, Rexall and the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of these defendants' wrongful conduct, plaintiffs and the other members of

20

the Class suffered damages in connection with their purchases of Rexall stock during the Class Period..

   **WHEREFORE,** plaintiffs pray for relief and judgment, as follows:

   i)    Determining that this action is a proper class action, designating plaintiffs as Lead Plaintiffs and certifying plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and their counsel as Lead Counsel;

   ii) Awarding compensatory damages in favor of plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

   iii) Awarding plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

   iv) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

DATED:  November 9, 1998

**MILBERG WEISS BERSHAD**
**HYNES & LERACH LLP**

By: _____
    Julian H. Kreeger
    (Fla. Bar No. 098595)
    Kenneth J. Vianale
    Jack Reise
    (Fla. Bar. No. 058149)

5355 Town Center Road
Suite 900
Boca Raton, Florida
(561) 361-5000

    -and

Steven G. Schulman
Samuel H. Rudman
One Pennsylvania Plaza
49th Floor
New York, NY  10119
(212) 594-5300

**SCHIFFRIN CRAIG & BARROWAY LLP**
Andrew L. Barroway
3 Bala Plaza East, Suite 400
Bala Cynwyd, Pennsylvania
19004
(610) 667-7706

**Attorneys for Plaintiffs**

22

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

THOMAS J. HELMS ("Plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed the Complaint and authorized its filing.

2.  Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.  Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.  Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

| Security | Transaction | | Date | Price Per Share |
|----------|-------------|---|------|-----------------|
| Common Stock | Purchased | 300 shares | 09/29/98 | $17 3/8 |
| Common Stock | Sold | 300 shares | 10/01/98 | $15.00 |

5.  During the three years prior to the date of this Certification, Plaintiff has sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws: N/A

6.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true
and correct.  Executed this ___6__ th day of November, 1998.

_____

THOMAS G. HELMS

REBALL\HELMS.CRT

### CERTIFICATION OF BIERMAN DERMATOLOGY GROUP/IRA
### IN SUPPORT OF CLASS ACTION COMPLAINT

Stanley Bierman, on behalf of the Bierman Dermatology Group/IRA ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint prepared by counsel in the above-captioned case and has authorized its filing.

2. Plaintiff did not purchase the securities that are the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the proposed Class Period, plaintiff executed transactions in the securities of Rexall Sundown, Inc. as follows: Purchase 1000 shares on November 4, 1998, at $21.3125 per share.

5. In the past three years, plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws.

6. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 9th day of November, 1998.

/s/ Stanley Bierman

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

THOMAS J. HELMS AND BIERMAN
DERMATOLOGY GROUP/IRA on behalf of
themselves and all others similarly
situated

**DEFENDANTS**

REXALL SUNDOWN, INC., CARL DeSANTIS,
CHRISTIAN A. NAST, DAMON DESANTIS and
GEARY COT...

98 - 8798
CIV-DIMITROULEAS

MAGISTRATE JUDGE
SELTZER

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Delaware County, PA
(EXCEPT IN U.S. PLAINTIFF CASES)

98CV 8798 MDIMS

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Palm Beach
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Milberg Weiss Bershad Hynes & Lerach LLP
5355 Town Center Road, Suite 900
Boca Raton, FL 33486

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION
(PLACE AN X IN ONE BOX ONLY)

- ☐ 1. U.S. Government Plaintiff
- ☒ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(For Diversity Cases Only)
(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

15 U.S.C. Section 78j(b) - fraud in connection with the sale of securities

**IVa.** 21 days estimated (for both sides) to try entire case

## V. NATURE OF SUIT
(PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS | B FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 States Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane  ☐ 362 Personal Injury-Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability  ☐ 365 Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **A PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander  ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine  ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability  ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | **B SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle  ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability  ☐ 385 Property Damage Product Liability | **A LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability |  | ☐ 720 Labor/Management Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | ☐ 730 Labor/Management Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting  **B PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **A FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment  ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations  Habeas Corpus: | ☐ 791 Employee Ret. Inc. Security Act | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare  ☐ 530 General |  |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights  ☐ 535 Death Penalty |  |  | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property |  ☐ 540 Mandamus & Other |  |  |  |
|  |  ☐ 550 Civil Rights  * A or B |  |  |  |

## VI. ORIGIN
(PLACE AN X IN ONE BOX ONLY)

- ☒ 1. Original Proceeding
- ☐ 2. Removed From State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Refiled
- ☐ 5. Transferred from another district (Specify)
- ☐ 6. Multidistrict Litigation
- ☐ 7. Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT
CHECK IF THIS IS A ☒ CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint
JURY DEMAND:  ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY
(See Instructions):
JUDGE _____   DOCKET NUMBER _____

DATE: November 9, 1998

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT
SF 1-2
REV. 8/94

FOR OFFICE USE ONLY: Receipt No. 70945   Amount: 150.00   M/tfp: _____