UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 98-8798-CIV-DIMITROULEAS

IN RE REXALL SUNDOWN, INC.
SECURITIES LITIGATION,

_____/

**FINAL ORDER OF DISMISSAL**

SEP 20 2001

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss the Second

Amended Consolidated Complaint [DE 95] and Plaintiff's Request for Oral Argument [DE 99].

The Court has carefully considered the motions and is otherwise fully advised in the premises.

## I. BACKGROUND

Plaintiffs filed a two-count Second Consolidated Amended Class Action Complaint

(hereinafter, "Second Amended Complaint") alleging that Defendant Rexall Sundown,

Inc.("Rexall") and several of its senior executives[1] violated federal securities laws, in particular

Section 10(b) of the Securities and Exchange Act, Rule 10b-5 and Section 20(a) of the Exchange

Act. This Court granted Defendants' Motion to Dismiss the Amended Complaint, and allowed

Plaintiffs leave to amend. Plaintiffs have now filed their Second Amended Complaint, adding

some more detail to their previous allegations. The Court will now incorporate parts of its prior

Dismissal Order.

Defendant Rexall is engaged in the business of selling vitamins and nutritional

supplements to retailers and to the public. The Second Amended Complaint alleges that Rexall

and the senior executives mislead investors by failing to disclose a negative sales trend in one of

---

[1] The individual defendants are Carl DeSantis, Chairman of the Board; Christian Nast,
President, Chief Executive Officer, and a director; Damon DeSantis, President of Rexall's
marketing subsidiary, Executive Vice President and director of Rexall; and Geary Cotton, Chief
Financial Officer and Treasurer of Rexall.



its product lines with regard to its principal retailer customer, Wal-Mart, Inc., by engaging in

"channel stuffing" and excessive rebates to prop up sales and quarterly earnings per share, and by

personally profiting from these misrepresentations by selling shares of stock after making

misleading public statements. Plaintiffs allege that from March 19, 1998 through November 5,

1998, Defendants perpetrated a fraud-on-the-market in failing to disclose material information

that led to artificial inflation of Rexall's stock price. When Defendants finally made public a

decline in earnings on November 5, 1998, the stock price plummeted. The Complaint alleges

that these actions caused damages to members of the purported class of Rexall investors.

Turning to the specifics of the complaint, Plaintiffs allege the following misleading

statements:

1)  March 19, 1998 – Company press release regarding quarterly report in which Nast and
    Carl DeSantis state that they see continued positive trends of demand for Rexall's
    products and Rexall's leadership position in their industry. (Exhibit B to Defendants'
    Motion to Dismiss Second Amended Complaint)
2)  April 13, 1998 – Rexall's quarterly report states that "the increase in sales to retailers was
    primarily attributable to increased sales and distribution to the Company's existing
    customer base business, new product introductions and new account distribution."
    (Exhibit C to Defendants' Motion to Dismiss Second Amended Complaint)
3)  June 15, 1998 -- A Wall Street Journal article mentioning the increased competition to
    Rexall from Wal-Mart's sale of its own private label supplement brand, in which Nast is
    quoted as stating "We're very supportive of their business. . . . We aren't concerned."
    (Exhibit D to Defendants' Motion to Dismiss Second Amended Complaint)
4)  June 17, 1998 -- A company press release regarding quarterly report in which Nast states
    that Rexall's year over year sales growth continues to outpace that of the overall industry,
    that Rexall's products are well-received, and its distribution continues to expand.
    (Exhibit E to Defendants' Motion to Dismiss Second Amended Complaint)
5)  July 13, 1998 – Rexall's quarterly report describes a $175.1 million sales increase over
    the past nine months, and attributes the increase to "increased sales and distribution to the
    Company's existing customer base business, new account distribution as well as new
    product introductions" (Exhibit F to Defendants' Motion to Dismiss Second Amended
    Complaint)
6)  July 20, 1998 – An industry journal article containing statements of Rexall's Vice-
    President of Field Sales, Kelley Michols, touting the introduction of new Rexall products.
    Ms. Michols stated "when we introduce an item, it works. We are going to introduce
    products we believe in and that are going to be successful. . . . [consumers] know that the

2

products we put out there work." Second Amended Complaint, ¶ 57.

7) October 7, 1998 – A company press release regarding quarterly report in which Nast describes the "outstanding revenue and net income growth," and a 20.6 per cent increase in net operating margins despite a period of doubling investment in advertising and product development. Nast also states that Rexall continues to achieve a substantially higher sales growth rate compared to the nutritional industry as a whole. (Exhibit H to Defendants' Motion to Dismiss Second Amended Complaint)

Plaintiffs allege that these company and individual statements, along with company denials contained in an August 31, 1998 negative story in the Los Angeles Times concerning the lack of proper potency in Rexall's (and competitors) St. John's Wort anti-depression supplement, a September 29, 1998 stock repurchase program by Rexall, a scheme to channel stuff or artificially raise fourth quarter sales (June, July and August of 1998), a scheme to illegal sell to distributors in Canada, and numerous personal sales of stock by Nast, Carl DeSantis, Cotton, and other high-ranking corporate officers, all add up to sustain a securities fraud case against the Defendants.

The Court notes that the new allegations added to the Second Amended Complaint consist of the additional public statement by Kelley Michols on July 20, 1998 (listed above at #6), ¶ 57; a general description of the internal sales reports now identified as "Monthly Financial Statements," ¶¶ 34a and 34b; a description of alleged inventory manipulation by an unnamed source, ¶¶ 41-42; a description of an alleged illegal Canadian distribution scheme, ¶¶ 48-50; and reference to a Federal Trade Commission action against Rexall regarding one of their products, ¶ 59. The Defendants have moved to dismiss the Second Amended Complaint described above for failure to state a claim under Section 10(b) and Rule 10b-5, as amended by the Private Securities Litigation Reform Act of 1995 ("PSRLA"). The Defendants argue that Plaintiffs have failed to plead with particularity facts either to support the claim that the statements were misleading when made, or to support a strong inference of severe recklessness.

3

## II. DISCUSSION

To maintain a Rule 10b-5 fraud action a plaintiff must establish 1) a false statement or omission of material fact, 2) made with scienter, 3) upon which the plaintiff justifiably relied, and 4) that proximately caused the plaintiff's injury. Robbins v. Koger Properties, Inc., 117 F.3d 1441, 1447 (11th Cir. 1997). The United States Court of Appeals for the Eleventh Circuit has explained the standards to use under the PSLRA. In addition to meeting the above elements of a Rule 10b-5 action, the Eleventh Circuit has explained that the "scienter" requirement is met when a plaintiff "plead[s] with particularity, specific facts which give rise to a strong inference that the defendant acted in a severely reckless fashion." Bryant v. Avado Brands, Inc. 187 F.3d 1271, 1285 (11th Cir. 1999). In addition, the PSLRA states that the "complaint shall state with particularity all facts on which" the allegations are formed. See 15 U.S.C. § 78u-4(b)(1).

Even if a plaintiff can meet this pleading standard, the PSLRA allows defendants to argue on a motion to dismiss that the statements at issue were "forward-looking statements." 15 U.S.C. § 78u-5(c)(1); Harris v. Ivax Corporation, 182 F.3d 799, 803 (11th Cir. 1999). Liability for forward-looking statements may be avoided if such forward-looking statement "is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(i); Ivax, 182 F.3d at 803. In addition, even if the forward-looking statement has no accompanying cautionary statement, a plaintiff must prove that the defendant made the statement with "actual knowledge" that it was "false or misleading." 15 U.S.C. § 78u-5(c)(1)(B); Ivax, 182 F.3d at 803.

### A. Materiality

This Court has previously concluded that on the issue of materiality, for purposes of a motion to dismiss, a reasonable investor would want to know about actual or potential declines in

4

Rexall's sales to or by Wal-Mart, Rexall's biggest customer.[2]

## B. Pleading with Particularity

The PSLRA requires the complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.A. §78u-4(b)(1). Another Court in this District has stated, in finding that the standard has been met, a complaint must "set forth in detail and with particularity the statements Plaintiffs allege to be false, when the statements were made, who made the statements, why the statements are false, and what the Defendants stood to gain in making the statements." See In re Sunbeam Securities Litigation, 89 F.Supp.2d 1326, 1338 (S.D.Fla. 1999). On review of the Complaint and the full statements attached to Defendants' Motion to Dismiss Second Amended Complaint that are excerpted in Plaintiff's complaint,[3] this Court concludes that although the Complaint sets forth with particularity the who, when, what, and motive regarding the alleged false statements and material omission, Plaintiff's Second Amended Complaint still fails on the issue of why the statements are false and misleading. Although Plaintiffs have improved their particularity by now referring to "Monthly Financial Statements" instead of unspecified "internal reports" regarding sales by Wal-Mart of Rexall's products that were allegedly available to the Defendants but not to the public,[4] the

---

[2] For explanation of this conclusion, please refer to the Court's Order of March 29, 2000 [DE 75].

[3] The Eleventh Circuit held in Avado Brands that such publicly filed documents may be considered for purposes of what statements were made by Defendants. 187 F.3d at 1278.

[4] Or at least not easily available to the public, and thus triggering a duty to disclose. See Rudolph v. Arthur Andersen & Co., 800 F.2d 1040, 1043 (11th Cir. 1986), cert denied, 480 U.S.

5

allegations still rely on hearsay from an unidentified source. See Second Amended

Complaint ¶¶ 34a and 34b.

Plaintiffs argue that they have now substantiated their allegations as much as is required

on a motion to dismiss. Defendants argue that reliance on unnamed sources, and a reference to

generic internal "monthly statements" without any detail as to what numbers were before

Rexall's executives does not meet the PSLRA requirement of pleading with particularity "all

facts." Plaintiffs cite to various unpublished opinions, as well as to In re Sunbeam Securities

Litigation, 89 F.Supp.2d 1326, 1335 (S.D.Fla. 1999) and Novak v. Kasaks, 216 F.3d 300 (2nd

Cir. 2000) for their argument that the PSLRA does not require naming of confidential sources.

The Second Circuit stated in Novak that:

> our reading of the PSLRA rejects any notion that confidential sources must be
> named as a general matter. In our view, notwithstanding the use of the word "all,"
> paragraph (b)(1) does not require that plaintiffs plead with particularity every
> single fact upon which their beliefs concerning false or misleading statements are
> based. Rather, plaintiffs need only plead with particularity sufficient facts to
> support those beliefs. Accordingly, where plaintiffs rely on confidential personal
> sources but also on other facts, they need not name their sources as long as the
> latter facts provide an adequate basis for believing that the defendants' statements
> were false. Moreover, even if personal sources must be identified, there is no
> requirement that they be named, provided they are described in the complaint with
> sufficient particularity to support the probability that a person in the position
> occupied by the source would possess the information alleged. In both of these
> situations, the plaintiffs will have pleaded enough facts to support their belief,
> even though some arguably relevant facts have been left out. Accordingly, a
> complaint can meet the new pleading requirement imposed by paragraph (b)(1) by
> providing documentary evidence and/or a sufficient general description of the
> personal sources of the plaintiffs' beliefs.

Novak v. Kasaks, 216 F. 3d at 313-314.

Defendants on the other hand, cite to several cases to support the notion that a PSLRA

---

946, 107 S.Ct. 1604 (1987).

complaint must set forth the source of the information and the reasons for the belief. See In re Silicon Graphics Inc. Securities Litigation, 183 F.3d 970, 988 (9th Cir. 1999); Romani v. Shearson Lehman Hutton, 929 F.2d 875, 878 (1st Cir. 1991) (approved but superceded by statute as described in Greebel v. FTP Software, Inc., 194 F.3d 185, 193-194 (1st Cir.1999)); In re Green Tree Financial Corp., 61 F.Supp.2d 860, 872 (D.Minn. 1999) (additional cases cited therein). Upon a review of the competing cases, and noting the opinions of fellow Southern District of Florida Judges Middlebrooks (In re Sunbeam) and Moreno (Holmes v. Baker, -- F.Supp.2d – , 2001 WL 1001216, 16-17 (S.D.Fla. August 23, 2001)), this Court concludes that the plain language of the PSRLA leads to the conclusion that all facts must be plead when a complaint is based upon information and belief or the unsubstantiated investigation of counsel, and therefore confidential sources must be more clearly identified than in the Second Amended Complaint in this case. Therefore, the allegations of misleading statements with regard to declining sales do not plead fraud with sufficient particularity under the PSLRA.

The Plaintiff's theory continues to hinge on the omissions regarding declines in sales by Wal-Mart of Rexall's products. Thus, failure to plead with particularity why and how Defendants knew or were severely reckless as to the decline in Wal-Mart sales undermines Plaintiff's entire Second Amended Complaint.

Plaintiffs' additional allegations concerning alleged illegal Canadian distributions, channel stuffing (use of rebates and reduced prices to temporarily increase sales figures), the Los Angeles Times article on improper dosing of St. John's Wort, and the individual defendants' sales of Rexall stock during the relevant period all do not cure the pleading deficiency described above. First, as to the allegations in the Second Amended Complaint, ¶¶ 48-50, regarding an alleged Canadian and other illegal foreign distribution schemes, these allegations are not plead

7

with particularity as they rely solely on newspaper accounts of an apparently ongoing Florida Attorney General's office investigation. Under the PSLRA, absent some conclusion to that investigation or some publicly available document or at least "facts on which the belief is formed," these allegations are not plead with particularity.

Turning next to Rexall's rebate policy during the fourth quarter, these allegations do not evidence an ongoing fraud, as there are other legitimate explanations for a company to engage in 45% rebates. Third, while the LA Times article raised legitimate consumer protection issues, there is no indication how the revelations and subsequent company denials amount to securities fraud. Finally, the individual sales of stock by the individual defendants, while providing motive to engage in stock price manipulation, and are a factor in determining recklessness, are not sufficient to demonstrate scienter in the Eleventh Circuit. Avado Brands, 187 F.3d at 1285-86. These additional allegations of corporate wrongdoing, even taken all together, do not explain how the individual defendants knew, to the exclusion of investors,[5] that Wal-Mart's sales of

---

[5]   Plaintiffs also have a problem with the justifiable reliance prong of their case. The Court concludes that the June 15, 1998 Wall Street Journal article did publicize the Wal-Mart expansion of its private-label herbal supplement business sufficiently to factor the effect of such expansion on Rexall's stock price under the efficient market theory upon which Plaintiffs travel. Mr. Nast's vague statement of non-concern in that same article is clearly puffery or spin of a CEO in the face of obvious bad news regarding a company's competition (This statement is also too vague to be misleading under Rule 10b-5.). Thus, as of June 15, 1998, an investor should have known that Wal-Mart was expanding its private label vitamin business, a fact that a reasonable investor would factor into his or her decisions regarding Rexall's stock as Wal-Mart was Rexall's biggest customer. See In re Boston Technology, 8 F.Supp.2d 43, 60, n.20 (D.Mass 1998) ("Surely the reasonable investor recognizes that having all of one's eggs in a single basket, particularly in a high stakes business environment, is risky.").

In addition, even Plaintiffs' Second Amended Complaint indicates in ¶ 30 that Wal-Mart's deal with Twin Labs became public in Twin Labs public filings on or before March 19, 1998. Thus, under Plaintiffs' own fraud-on-the-market and efficient market theory, ¶ 72 of Second Amended Complaint, investors should have been aware of the potential threat to Rexall sales from Wal-Mart's new private-label brand.

8

Rexall products were declining in significantly enough numbers to affect corporate earnings.

Even if this Court were to follow the In re Sunbeam and Holmes v. Baker opinions referenced

above, Plaintiffs have not alleged sufficient other facts, apart from those supported only by

confidential sources, which provide an adequate basis for believing that the alleged omissions

occurred and which support the severe recklessness scienter requirement.

## C. Forward-Looking Statements

The Court previously concluded in its March 29, 2000 Order that the some of the

statements put forth by Plaintiffs as misleading are forward-looking statements or accurate

statements of historical fact regarding past performance, except for the vague statement of Mr.

Nast contained in the June 15, 1998 Wall Street Journal article. Each of the press releases and

10Q or 10K reports alleged to be misleading are alleged to be so due to omissions regarding

future sales, not any misreporting of past performance. Thus, the allegedly misleading

statements contain verbiage that revenue growth will continue into the future. Such statements

are clearly forward-looking statements under 15 U.S.C. §78u-5(c)(1). Even if such forward-

looking statements are mixed in with sentences describing known facts, the entire statement is

treated as a forward-looking statement for purposes of the PSLRA safe harbor provisions. Ivax,

182 F.3d at 807.[6]

If these forward-looking statements are accompanied by "meaningful cautionary

statements identifying important factors that could cause actual results to differ materially from

---

[6] Plaintiffs appear to also argue that the specific statements culled from the press releases
and SEC filings listed above in Section I of this Order were not specifically labeled as forward-
looking. However, a statement at the end of each release or filing states generally that forward-
looking statements in this release or report are made pursuant to the safe harbor provisions of the
PSLRA. There is no authority in this Circuit to hold that a company must specifically identify
which statements in a document are the forward-looking statements.

9

those in the forward-looking statement," then even misleading forward-looking statements are not actionable under the PSLRA. See 15 U.S.C. § 78u-5(c)(1)(A)(i). The Eleventh Circuit recently held in Ivax that the cautionary statement need not "explicitly mention the factor that ultimately belies a forward-looking statement." Ivax, 182 F.3d at 807. In this case, however, the cautionary statements in the March 19, 1998 press release simply refers the reader to the company's SEC filings.[7] Beginning with the June 17, 1998 press release and the other statements identified by Plaintiffs and listed above in Section I of this Order, the cautionary statement does list some general factors that may adversely affect the forward-looking statements. Given this Court's above rulings regarding the failure to plead material omissions and scienter with the particularity required by the PSLRA, the Court need not decide if the cautionary statement in the March 19, 1998 press release and the April 13, 1998 10-Q report meet the safe harbor standard under the PSLRA and the Ivax decision.

## D. Individual Liability

In the absence of a viable Section 10(b) or Rule 10b-5 claim, an action against controlling individuals pursuant to Section 20(a) cannot be maintained. See Ehlert v. Singer, 245 F.3d 1313, 1320 (11th Cir. 2001).

## E. Rule 11 Findings

The PSLRA requires this Court to make specific findings "regarding compliance by each party and each attorney representing any party with each requirement of Rule11(b) of the Federal Rules of Civil Procedure. . . ." 15 U.S.C. § 77z-1(c)(1); Ehlert, 245 F.3d at 1320. This Court

---

[7] In fact, the company's April 13, 1998 10-Q report filed with the SEC does not mention what the important risk factors are but refers the reader to unspecified "company filings with the Securities and Exchange Commission."

10

finds that each party and attorney have complied with each component of Rule 11. Though the case is dismissed, such dismissal is not due to the filing of any frivolous arguments.

### III. CONCLUSION

This Court determines for the reasons expressed above that the PSLRA mandates dismissal of the Plaintiffs' complaint, principally due to the failure to plead with particularity that Defendants had the requisite scienter of severe recklessness. Despite the circumstantial evidence of motive and opportunity in the form of sales of stock, this Court must follow the PSLRA and Eleventh Circuit precedent on the pleading standard necessary to maintain a securities fraud action in this Circuit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Request for Oral Argument [DE 99] is hereby **DENIED**;

2. Defendants' Motion to Dismiss the Second Amended Consolidated Complaint [DE 95] is hereby **GRANTED**;

3. The Second Amended Consolidated Class Action Complaint is hereby **DISMISSED** for failure to state a claim;

4. All other pending motions are hereby **DENIED** as moot;

5. The Clerk may close this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida,

this ⅔Ủ day of September, 2001.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Kenneth Vianale, Esq.
Richard Critchlow, Esq.
(per this Court's February 2, 1999 Order consolidating the cases,
service of this Order will only be made upon Plaintiffs' lead counsel and Defendants' counsel.)